# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **VICTIM SERVICES, INC.,** *et al.*,<br><br>            Movants,<br><br>v.<br><br>**CONSUMER FINANCIAL PROTECTION BUREAU,**<br><br>            Respondent. | Case No. 1:17-mc-03002 (CRC) |

## **OPINION AND ORDER**

Before this Court is a motion to compel the Consumer Financial Protection Bureau to comply with a subpoena to produce documents. For the reasons that follow, the Court will transfer the motion to the court that issued the subpoena—the U.S. District Court for the Northern District of California—pursuant to Federal Rule of Civil Procedure 45(f).

The movants (collectively, "Victim Services") previously contracted with state prosecutors in California to manage a diversion program for people accused of writing bad checks. In a putative class action pending in the Northern District of California, several California residents allege that Victim Services unlawfully collected fees related to that diversion program. See Breazeale v. Victim Servs., Inc., No. 3:14-cv-5266 (N.D. Cal.); Decl. of Sean M. Hardy Supp. Mot. Compel ("Hardy Decl.") Ex. 1, at 1. Specifically, those plaintiffs claim that notices sent to individuals eligible for the program created a false impression that Victim Services was a law enforcement entity (as opposed to a mere debt collector) and that the notices falsely suggested that, without enrollment in the diversion program, criminal charges would be imminent (even if the chances of prosecution were slim to none). Hardy Decl. Ex. 1 ¶¶ 2–3.

The year that class action was filed, the Consumer Financial Protection Bureau brought an enforcement action against Victim Services based on the same alleged conduct. Hardy Decl. Ex. 2, at 1. The parties settled that action through a stipulated final judgment and consent order approved by the District of Maryland in March 2015. Id. Ex. 3. The consent order enjoined Victim Services from continuing its diversion program and imposed a $50,000 civil penalty. Id. at 4–9. It did not require Victim Services to pay restitution to individuals who had paid them diversion-program fees.

Several months after entry of the consent decree, however, the Bureau allocated $23.26 million from its Civil Penalty Fund to reimburse people who paid diversion fees to Victim Services. Decl. Rumana Ahmad Supp. Opp'n Mot. Compel ¶ 3. The Civil Penalty Fund stores fines that the Bureau has collected in its enforcement actions. 12 U.S.C. § 5497(d)(1). The Bureau may use that money to pay "the victims of activities for which civil penalties have been imposed under the Federal consumer financial laws." Id. § 5497(d)(2).

With the class action still pending in California, Victim Services in October 2016 served a subpoena on the Bureau that had been issued by the California court. The subpoena requested all documents and communications related to the Bureau's payment of individuals after the enforcement action. Hardy Decl. Ex. 6. The Bureau responded with a letter asserting several objections to the subpoena. Id. Ex. 7. The parties conferred by telephone but were unable to resolve their disagreement. See id. Ex. 9.

Victim Services then filed this motion to compel the Bureau's compliance with the subpoena. As required by Federal Rule of Civil Procedure 45(c), the motion was filed in this Court, as the federal district court where compliance with the subpoena is required. In opposing the motion, the Bureau contends that complying with the subpoena would impose a significant burden on the Bureau because, under the Privacy Act, 5 U.S.C. § 552a, it would have to issue notices to the nearly 40,000 individuals whose information would be disclosed. And the Bureau claims that the

2

cost of such notification—somewhere between $40,000 and $82,000, plus staff resources—far outweighs the minimal relevance of any disclosed information to the California litigation.

After reviewing the parties' briefs, this Court has determined that this motion should be transferred to the U.S. District Court for the Northern District of California—the court in which the putative class action against Victim Services is pending. In subpoena-related disputes, the federal district court where compliance is required "may transfer a motion . . . to the issuing court . . . if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Where exceptional circumstances exist, a court may transfer such a subpoena-related motion *sua sponte*. See, e.g., Orix USA Corp. v. Armentrout, 2016 WL 3926507, at *2 (N.D. Tex. July 21, 2016) ("Rule 45(f) does not require that a motion to transfer be filed . . . ."). The advisory committee note accompanying Rule 45(f) provides further guidance on what constitutes exceptional circumstances: "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. advisory committee's note to 2013 amendments. Those interests must, however, be weighed against "burdens on local nonparties subject to subpoenas" that could result from transfer. Id.

The Court finds that exceptional circumstances warrant transfer of this motion, as this Court's resolution of the motion could substantially interfere with the California court's management of the underlying class action and that potential interference outweighs any potential burden on the Bureau.

The decision of whether to order the Bureau's compliance with the subpoena depends, first and foremost, on whether the information regarding payment from the Civil Penalty Fund "is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). If the material were irrelevant as a matter of law—which the Bureau argues is the case—then Victim Services would not be

3

entitled to its production no matter how insignificant the burden on the Bureau. If a court were to find the material relevant, it would then weigh that relevance against the Bureau's costs of compliance (which in turn would require resolving the parties' dispute over whether the Privacy Act demands individualized notice to people whose information is shared).

The problem here is that resolving the parties' dispute over relevance would require the court to resolve a difficult and contested legal question that may prove central to the underlying class action. Specifically, Victim Services makes a colorable argument that individuals who obtained payments from the Bureau's Civil Penalty Fund are ineligible to obtain full restitution in the pending class action under the so-called "double recovery rule." See EEOC v. Waffle House, Inc., 534 U.S. 279, 297 (2002) ("[I]t goes without saying that the courts can and should preclude double recovery by an individual."). If that were true, information about the Bureau's payment to individuals—including the identity of payees and the amounts paid—would be highly relevant to Victim Services's defense, and perhaps to the certification and composition of the putative class as well.

Thus, the relevance of the information turns squarely on whether the Bureau's payments from the Civil Penalty Fund could implicate the double recovery rule. To support its side of that debate, Victim Services relies on the Ninth Circuit's decision in California v. IntelliGender, LLC, 771 F.3d 1169 (9th Cir. 2014), which held that the double recovery rule barred the State of California from seeking restitution on behalf of its citizens against a private defendant who had already paid those same individuals restitution through a class-action settlement, id. at 1179–80. The Bureau responds that IntelliGender is inapposite and that the double recovery rule has no operation where the government, as opposed to the class-action defendant itself, paid the victims their initial compensation.

4

Without wading too much into their merits, these arguments show that the question of whether the double recovery rule forecloses restitution in Victim Services's case is an open and debatable question. And, importantly, it is a question that will almost certainly need to be answered at some point in the pending class action against Victim Services—whether at the class certification stage, in resolving the case's merits, or in calculating damages. Thus, beyond resulting in a redundant resolution of the issue, this Court's decision on the relevance of the information Victim Services seeks—particularly if inconsistent with the California court's own view—could disrupt that court's management of the underlying class action.

Moreover, the Court does not find that transferring this motion will significantly burden the Bureau. The Bureau is a large federal government agency with substantial resources. It regularly litigates in courts outside the District of Columbia, including those in California. See, e.g., CFPB v. Morgan Drexen, Inc., 60 F. Supp. 3d 1082 (C.D. Cal. 2014) (Bureau enforcement action). The parties have formulated their positions in briefs but have not appeared before this Court for a hearing. And to the extent that the Bureau might be burdened by the distance between the Northern District of California and its Washington offices, the committee when adopting Rule 45(f) encouraged judges "to permit telecommunications methods to minimize the burden a transfer imposes on nonparties." In any event, the slight burden imposed by transferring this motion is outweighed by the interest in obtaining an efficient and uniform resolution of a threshold legal question—one that not only underlies this discovery dispute but also could significantly affect the merits of the California class action.

Finally, as suggested in the Advisory Committee Note to the 2013 amendments to Rule 45(f), the Court in reaching its decision has consulted with the district judge handling the California litigation, who agrees that transfer is appropriate. Fed. R. Civ. P. 45(f) advisory committee's note

("Judges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case while addressing subpoena-related motions.").

At bottom, the California court is "in a better position to rule on the . . . motion . . . due to [its] familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." Wultz v. Bank of China, Ltd., 304 F.R.D. 38, 47 (D.D.C. 2014). Under like circumstances, this Court has transferred subpoena-related motions. See XY, LLC v. Trans Ova Genetics, L.C., 307 F.R.D. 10, 12–13 (D.D.C. 2014) (citing transferee court's interest "in maintaining oversight of all aspects of this complex litigation, especially since the court has already supervised substantial discovery and begun preparations for trial"). It will do the same here. It is therefore:

**ORDERED** that the Motion to Compel Consumer Financial Protection Bureau to Comply with Properly-Served Subpoena (ECF No. 1) shall be transferred to the U.S. District Court for the Northern District of California.

**SO ORDERED.**

CHRISTOPHER R. COOPER<br>
United States District Judge

Date: February 7, 2018